Luther MARTIN *v.* STATE of Arkansas

CR 93-1314                                                    875 S.W.2d 81

Supreme Court of Arkansas
Opinion delivered May 2, 1994

*Jim Pedigo*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. Appellant Luther Martin was sentenced to forty years imprisonment in the Department of Correction for aggravated robbery of a convenience store in Hope, Arkansas. He raises three arguments for reversal of his conviction: (1) the trial court erred in permitting the prosecutor to twice amend its original information prior to actual trial and in denying Martin's request for a continuance and a new lawyer in light of the fact that the court granted the prosecution's second request to amend; (2) the trial court erred in admitting Detective Bill Otis's testimony as to information received from a third party during his investigation; and (3) the trial court erred in denying his motion for directed verdict.

We first address Martin's challenge to the sufficiency of the evidence prior to a review of his other asserted trial errors. *Coleman* v. *State*, 315 Ark. 610, 869 S.W.2d 713 (1994); *Clark* v. *State*, 315 Ark. 602, 870 S.W.2d 372 (1994); *Ricks* v. *State*, 316 Ark. 601, 873 S.W.2d 808 (1994). On appeal, the evidence is reviewed in the light most favorable to the appellee, and the judgment will be affirmed if there is any substantial evidence to support the jury's verdict. *Green* v. *State*, 313 Ark. 87, 852 S.W.2d 110 (1993). Evidence is substantial when it is forceful enough to compel a conclusion one way or the other, beyond suspicion and conjecture. *Ricks, supra.* We need consider only that testimony which supports the verdict of guilty. *Thomas* v. *State*, 312 Ark. 158, 847 S.W.2d 695 (1993).

## I. Sufficiency of the evidence

Reviewing the evidence in the light most favorable to the State, as appellee, we hold that the evidence was more than sufficient to uphold Martin's conviction.

According to the testimony of Mary Kay Taylor, on December 26, 1992, she was working the 3:00 p.m. to 11:00 p.m. shift at the E-Z Mart convenience store in Hope, Arkansas. At about 7:40 p.m., a man, whom she described to police as black, five feet, nine inches tall, with a mustache, hair close to his head, a brown jacket, dark pants, and a plaid shirt, came into the store. He brought a Pepsi to the counter, got a dollar from his pocket, and placed it on the counter. He then put his right hand in his pocket, "as if he had a gun," and said, "Freeze or you're dead." She did freeze, and the robber reached with his other hand over the counter, grabbed all the money out of each slot of the cash register, and headed for the door. As Ms. Taylor moved toward the phone, the robber said, "I told you not to move. I'll kill you." Frightened, she stopped until he went out the door and around the corner. Once he was out of sight, Ms. Taylor called the police. When they arrived, she recounted the events of the evening, emphasizing that while he removed the money, he kept his hand in his pocket as though holding a gun; it was her insistently stated belief that he had a gun.

Sergeant Stan Bailey, a member of the Hope Police Department, testified that he was working as patrol supervisor when he received a radio dispatch shortly after the robbery to look for a black male, five feet, nine inches to five feet, ten inches in height, and weighing 140 to 150 pounds. About seven blocks from the E-Z Mart, the sergeant saw a dirty, "beat up" Ford pickup truck parked on the street. The missing glass window on the driver's side had been replaced with a piece of plastic. A black male was sitting in the passenger side of the truck accompanied by a black female who was standing beside the vehicle. Sergeant Bailey approached them and asked them if they had seen anyone fitting the description he had just received, to which they responded, "No." Later, Sergeant Bailey heard that the robber was supposed to be in an old pickup with plastic on the driver's window. At that point, he contacted Officer Zeke, told him about his contact with the vehicle, and asked him to go to the Shover Village apartment complex to attempt to locate the vehicle.

Acting on the information he received from Sergeant Bailey, Officer Zeke drove to Shover Village, where he spotted a pickup matching the description of the truck. Because the registration check on the truck revealed that it was registered to a

Jewel Muldrew, a man for whom warrants were outstanding, Officer Zeke initiated a traffic stop and found that the driver was Martin. Officer Zeke told him that there were active warrants out for the car's owner and that a truck matching that description had possibly been involved in an aggravated robbery. He did not arrest Martin, however, because he did not have a warrant for him.

Detective Gary Wayne Billings explained that after Officer Zeke informed him about stopping Martin, he obtained the photo spread which included Martin's photograph and took it to the E-Z Mart, where Ms. Taylor identified Martin. Later that evening, Sergeant Bailey examined the photo spread and also identified Martin. Based, in part, on Ms. Taylor's and Sergeant Bailey's identification of the suspect, a warrant was issued for Martin's arrest, and he was picked up.

The photo spread was introduced into evidence. Officer Bailey's testimony placing Martin near the scene of the robbery shortly after it occurred and Ms. Taylor's unequivocal testimony identifying Martin as the culprit are sufficient to sustain the appellant's conviction. *Luckey* v. *State*, 302 Ark. 116, 787 S.W.2d 244 (1990).

## II. Amendment of informations

Martin's next argument concerning error on the part of the trial court is premised on the fact that the court permitted the prosecutor, over Martin's objection, to amend the charging instrument, an information, near the beginning of trial and again before the case had been submitted to the jury, and because the trial court refused to grant him a continuance after the second amendment so that he could get a new attorney.

An examination of the record of trial reflects that a felony information was filed with the circuit clerk on December 28, 1992, charging Martin with aggravated robbery pursuant to Ark. Code Ann. § 5-12-103, stating that:

> With the purpose of committing a theft, he was armed with a deadly weapon, and knowingly took or exercised unauthorized control over the property of another person, with the purpose of depriving the owner thereof . . .

The record further reflects the filing of a supporting affidavit for warrant of arrest, dated December 27, 1992, which alleged that:

> With the purpose of committing a felony *or misdemeanor* theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another, while being armed with a deadly weapon or *representing by word or conduct that he is so armed.*

(Emphasis added.) In addition, the affidavit spells out details constituting reasonable cause including the fact that "the suspect simulated a weapon in his right coat pocket while he reached into the cash register. . . ."

On the day of Martin's trial, before voir dire began, the prosecutor asked permission to amend the information. In support of his request, he alluded to the original information and its supporting affidavit:

> The affidavit which was approved by the Honorable Jim Gunter when the warrant was issued back on 12/27 of 1992. The language in the affidavit for probable cause had the correct language which correctly cites 5-12-103 Arkansas Code Annotated which is aggravated robbery statute. The only thing in the amended information that is changed is being armed with a deadly weapon or representing by word or *conduct that he was so armed.* That's the only change that has been made, so certainly there could not be prejudice and we furnished both the affidavits to Mr. Pedigo and it's been with him ever since we completed discovery, so I don't think there is any surprise or prejudice to the Defendant and we would ask to go forward, and of course the Court's instructions would include the language also and that's why we amended it.

Defense counsel objected but acknowledged that he had received a copy of the amended information the day prior to trial. The judge overruled his objection, finding that the amendment was "just to the extent that it conforms with the probable cause affidavit that has been on file. . . ."

A short time later, after the jury panel had been sworn and the first amended information had been read, the prosecutor asked

the trial court to allow a second amendment to the charging instrument, explaining that the information should not read, "with the purpose of committing a felony," it should state, "with the purpose of committing a felony *or a misdemeanor theft*." Counselor Pedigo asked for a recess to discuss this change with his client, Martin. After the recess, the trial court asked Martin if his attorney had talked with him and if he understood the amendment to the felony information. Martin responded that he understood and then asked for a continuance to "find my own lawyer because they indicted me on one charge and he ain't been representing me right." Explaining that Mr. Pedigo is a capable attorney, the trial judge denied his motion for continuance, stating:

> [T]he Court does recognize that the second instrument or document in the file which is an affidavit for warrant of arrest executed by Judge Jim Gunter on 12/27 of '92, at which time Luther Lee Martin was the individual sought in the affidavit and for aggravated robbery and it is alleged that on or about the 26th day of December 1992, committed by and being the Defendant, with the purpose of committing a felony or misdemeanor theft, and at that time — that is the only amendment sought by the State at this time and it does not in any way prejudice this Defendant's right to a fair trial.

Thereafter, the trial judge instructed the jury as to the second amended information, and Martin proceeded to trial.

Martin's argument requires two determinations: whether the court erred (1) in permitting either amendment to the information, and (2) in denying his request for a continuance.

■■ Pursuant to Ark. Code Ann. § 16-85-407 (1987), the State may amend an information up to a point after the jury has been sworn but before the case has been submitted to the jury as long as the amendment does not (1) change the nature or degree of the crime charged or (2) if the accused is not surprised. *Kilgore* v. *State*, 313 Ark. 198, 852 S.W.2d 810 (1993); *Wilson* v. *State*, 286 Ark. 430, 692 S.W.2d 620 (1985). The amendments satisfied these criteria. As the trial court explained, the amendments merely tailored the information to the affidavit for warrant of arrest, the original information's supporting document, and

did not change the original charge of aggravated robbery against Martin. The facts constituting reasonable cause as provided in the affidavit clearly describe the factual allegations against Martin. Thus, from the date of his arrest, he and his counsel were on notice as to the specifics of the charges against him, and he cannot now claim to be surprised by either amendment.

Martin also contends that the trial court erred in refusing to grant him a continuance in order to engage a new attorney because of the changes in the information. In support of this contention, he complains that the court granted a continuance to the State two days prior to trial because their primary witness was not available. Trial courts are not required to grant continuances as a matter of *quid pro quo.*

The denial of a motion for continuance is within the sound discretion of the trial court, and the trial court's ruling will be reversed only if there is an abuse of discretion. *Kilgore, supra.* The burden is on Martin to show an abuse of discretion. *Id.* He must also demonstrate prejudice before we will consider the trial court's denial of a continuance as an abuse of discretion which requires reversal. *Finch* v. *State,* 262 Ark. 313, 556 S.W.2d 434 (1977).

There was no showing that Martin or his counsel were surprised by the wording changes made in the amendments to the information or that Martin was not receiving adequate representation by attorney Pedigo. Under the circumstances, Martin has failed to prove abuse of discretion.

### III. Admission of Officer Otis's testimony

Next, Martin contends that the trial court erred in allowing Officer Bill Otis's testimony regarding information he received from an alleged informant because this information was inadmissible hearsay. In this regard, Officer Otis stated that he got a description of the robbery suspect from Ms. Taylor. Then as he began to say, "I developed some information that the suspect left the store —" Martin's counsel objected on hearsay grounds. Mr. Pedigo was permitted to voir dire the witness, and Officer Otis explained that when he said "developed information," he meant that he received information from one who wished to remain anonymous. Mr. Pedigo renewed his hearsay objection, and the prosecutor responded:

The State agrees it's hearsay, and of course that's why we have rules of evidence in this court and there are exceptions to that hearsay rule and he's allowed to tell them if he relied on it and I think that's what he is fixing to say that he relied on it and acted on it.

The Court overruled the objection, and Officer Otis continued his statement, explaining that he learned that the subject had left the store in a dark blue, dirty, Ford pickup, with the driver's window covered with plastic rather than glass. In reliance on this information, he broadcast a description of the truck to other units in the area. Because of this information, Sergeant Bailey was alerted that the truck he had seen on the street matched the description of the perpetrator's vehicle, causing him to inform Officer Zeke to be on the lookout for the truck.

Martin submits that in denying his hearsay objection, the trial court violated his rights under the Sixth Amendment to confront his accusers because Officer Otis's statement does not fall within any of the hearsay exceptions provided in Rule 803. Although he did argue hearsay below, he did not raise any constitutional objections. We have repeatedly held that we will not consider constitutional issues raised for the first time on appeal. *Whitson* v. *State*, 314 Ark. 458, 863 S.W.2d 794 (1993); *Green* v. *State*, 313 Ark. 87, 852 S.W.2d 110 (1993); *Friar* v. *State*, 313 Ark. 253, 854 S.W.2d 318 (1993). We, therefore, address this issue in a limited manner.

An out-of-court statement is not hearsay if it is offered to show the basis of action. A.R.E. Rule 801(c); *Bliss* v. *State*, 282 Ark. 315, 668 S.W.2d 936 (1984). Officer Otis's testimony was given in order to explain why Sergeant Bailey instructed Zeke to locate the truck and determine the identity of the driver and why Martin's photograph was placed in a lineup to show to the victim. *See Dandridge* v. *State*, 292 Ark. 40, 727 S.W.2d 851 (1987). Because his testimony was provided in order to show the "basis of action," we hold that the trial court did not err in overruling Martin's hearsay objection.

Affirmed.