Marrio Terrell DEDNAM *v.* STATE of Arkansas

CR 04–573                                                     200 S.W.3d 875

Supreme Court of Arkansas
Opinion delivered January 6, 2005

[Rehearing denied February 10, 2005.]

*Clint Miller*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

Robert L. Brown, Justice. Appellant Marrio Terrell Dednam appeals from his judgment of conviction for capital murder and his sentence to life imprisonment without parole. His sole allegation of error is that the circuit court erred in allowing a police detective to testify to statements made to her by the murder

victim with respect to another case, which allegedly constituted a motive for Dednam's acts. We find no reversible error, and we affirm the judgment and sentence.

The facts, which are garnered from the testimony at trial, are these. On December 4, 2002, Dednam and his friend, Willie Davis, contacted Alissa "Lisa" Jackson and asked her to call her friend Jerry Otis, the victim in this case.[1] Lisa was instructed to tell Otis that she wanted to meet him at a trailer park in southwest Little Rock. Otis agreed and had his friend, Herman Stevenson, drive him to the rendezvous spot. Upon arriving, Stevenson drove his car down the dead-end street in the park and saw Lisa Jackson. He reached the end of the road, turned around, and pulled his car up to Ms. Jackson. Otis got out of the passenger-side front seat of Stevenson's vehicle and began to enter the car's back seat on the passenger side so that Ms. Jackson could get in the front seat. As he was getting in the back seat of the car, he was fatally shot in the right side of the head. Dednam was arrested for the crime and charged with capital murder.

At the ensuing jury trial, the State sought to prove that Dednam's motive in the killing was to silence Otis for the benefit of Dednam's cousin, Antoine Baker, who was in jail at the time due to a crime allegedly perpetrated against Otis. Baker had allegedly tried to rob Otis some months earlier, and Otis was the prosecuting witness against him. To establish motive, the State put on proof that earlier on the day of December 4, 2002, the date of Otis's murder, Dednam had visited Baker in the Pulaski County Jail. In addition, both Stevenson and Ms. Jackson identified Dednam at the trial as Otis's murderer. Dednam was convicted of premeditated and deliberate capital murder and sentenced to life imprisonment without parole.

Dednam argues on appeal that this case is governed by the United States Supreme Court's decision in *Crawford v. Washington*, 124 S. Ct. 1354 (2004), which he claims stands for the proposition that formal statements given by a declarant in the course of a police interrogation of the declarant are testimonial in nature and not admissible. He claims that *Crawford* is directly on point for purposes of the instant case in that in this case, the circuit court permitted the State to introduce statements made to a police detective by the victim, Otis, which served as the probable cause to arrest Antoine

---

[1] At the time, Davis was Jackson's boyfriend.

Baker. Dednam asks this court to apply *Crawford* retroactively and asserts that Otis's out-of-court statements to the police detective were admitted to establish the truth of the matter asserted therein, which was that Baker robbed Otis. He maintains that without Otis's statements, which provided the motive for the crime, the State's proof of Dednam's guilt consisted solely of the uncorroborated identification testimony of Stevenson and Jackson. He claims that the erroneous admission of this evidence could not be considered harmless, because the jury's consideration of Otis's statements describing the robbery by Baker influenced the jury's finding of Dednam's guilt for the capital murder.

This court has been constant and adamant that matters pertaining to the admissibility of evidence are left to the sound discretion of the circuit court. *See, e.g., Martin v. State,* 346 Ark. 198, 57 S.W.3d 136 (2001). Moreover, we will not reverse a circuit court's ruling on a hearsay question unless the appellant can show that the circuit court abused its discretion. *See id.*

At issue in the case before us is the testimony of Detective Lynda Keel of the Little Rock Police Department. She was called as a witness for the State at trial and testified that Antoine Baker was arrested on November 26, 2002, on an aggravated-robbery warrant. Upon further questioning by the prosecutor, Detective Keel continued:

> PROSECUTOR: And what caused that warrant to be issued?
>
> DETECTIVE KEEL: On August the 5th, 2002, there was [an] aggravated robbery reported where Jerry Otis was the victim, and I consequently, about five days later, interviewed him, showed a photo spread. He knew the initials of the suspect and the name and I showed a photo spread.

At that time, defense counsel objected on the grounds that anything Otis said to Detective Keel constituted hearsay and violated Dednam's Sixth Amendment right to confront and cross-examine a witness against him, as well as his due-process rights under both the United States and Arkansas Constitutions. The State responded that it was not offering Detective Keel's testimony as evidence that Baker did in fact commit aggravated robbery or for the truth of the matter asserted but, instead, was offering it to show that Otis made the statements, true or not true, and that as a result, Baker was arrested and charged. The circuit court overruled Dednam's objection.

Later in Detective Keel's testimony, the following, and most pertinent, colloquy occurred:

> PROSECUTOR: You said that Jerry Otis made a report that Antoine Baker robbed him. Tell the jury briefly what he said that Antoine Baker did to him.

> DEFENSE COUNSEL: May we approach?

> (Conference at the bench, out of the hearing of the jury, as follows:)

> DEFENSE COUNSEL: What Jerry Otis said is hearsay, and there is no exception that fits. This denies us our right to confront and cross-examine witnesses under the U.S. Constitution's Sixth Amendment and the due process clause of both Constitutions, Arkansas and U.S.

> PROSECUTOR: This is the same objection counsel made a moment ago, and I had the same response. This is not the trial of Antoine Baker, and we are certainly not offering this evidence as proof that Antoine Baker did, in fact, commit this crime. That would be for another trial and another place, but simply that Jerry Otis made these statements, true or not true, and Antoine Baker was arrested because of these statements. And so they are not being offered for the truth of the matter asserted. They are not hearsay, and the Court should admit those statements.

> DEFENSE COUNSEL: I would also argue to the Court that this would be confusing to the jury about the issues in this case.

> THE COURT: Okay. I will overrule it, but I think you have already — all right.

> (Return to open court.)

> PROSECUTOR: Just summarize what this aggravated robbery case was.

> DETECTIVE KEEL: Jerry Otis went to an address on Crenshaw to visit a female friend. When he arrived at that

address, he was confronted by several subjects outside who pointed a gun at him, made him undress and took his clothes from him, $500 in cash and then fired shots at him.

PROSECUTOR: And this was Antoine Baker?

DETECTIVE KEEL: Yes. He identified Antoine Baker.

PROSECUTOR: And as a result of statements Jerry Otis made to you, what did you do in response?

DETECTIVE KEEL: Had a warrant issued.

Dednam relies on the United State's Supreme Court decision in *Crawford v. Washington, supra,* as his primary authority. In that case, the petitioner, Michael Crawford, was accused of stabbing Kenneth Lee, who had allegedly tried to rape Crawford's wife, Sylvia. Following Crawford's arrest, he and his wife gave statements to police officers regarding the stabbing, and Crawford was charged with the crime. At his trial, Crawford asserted self-defense, and Sylvia did not testify because of the state's marital privilege which prohibited a spouse from testifying without the other spouse's consent. The prosecutor attempted to refute Crawford's defense using a tape recording of Sylvia's statement to police officers in which she stated that she did not see anything in Lee's hand at the time Crawford attacked him. The Washington State Court of Appeals reversed Crawford's conviction and held that Sylvia's statement lacked any indicia of reliability, as required by *Ohio v. Roberts,* 448 U.S. 56 (1980). The Washington Supreme Court, however, reinstated the conviction and held that while the statement did not fall within a firmly-rooted hearsay exception, it did possess guarantees of trustworthiness. The United States Supreme Court granted *certiorari* to determine whether the State's use of Sylvia's statement violated Crawford's confrontation-clause rights.

The United States Supreme Court reversed the decision of the Washington Supreme Court. The Court noted that the principal evil at which the clause was directed was the use of *ex parte* examinations as evidence against an accused and added that the framers of the United States Constitution would not have allowed the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant

had had a prior opportunity for cross-examination. The Court further said that "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." 124 S. Ct. at 1364. It concluded that where testimonial evidence is at issue, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 1374. The Court added with respect to Crawford:

> In this case, the State admitted Sylvia's testimonial statement against petitioner, despite the fact that he had no opportunity to cross-examine her. That alone is sufficient to make out a violation of the Sixth Amendment. *Roberts* notwithstanding, we decline to mine the record in search of indicia of reliability. Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.

*Id.*

In order for *Crawford* to apply in the instant case, Otis's statements to Detective Keel must in fact constitute testimonial hearsay. The Arkansas Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c) (2004). With respect to an out-of-court statement, however, this court has held that it is not hearsay under Rule 801(c), where the statement is offered to show the basis for the witness's actions. *See Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998). Furthermore, we have held that out-of-court statements are not hearsay if they are not offered for the truth of the matter asserted in the statement. *See Bragg v. State*, 328 Ark. 613, 946 S.W.2d 654 (1997). Statements may be admissible to show they were made, however, as opposed to showing the truth of the matter asserted. *See Jackson v. State*, 274 Ark. 317, 624 S.W.2d 437 (1981).

In *Martin v. State*, 316 Ark. 715, 875 S.W.2d 81 (1994), this court examined Martin's contention that the circuit court erred in allowing a police officer to testify regarding information he received from an alleged informant on the basis that the information was inadmissible hearsay. The police officer's testimony consisted of his explanation of how he learned that the suspect in an aggravated robbery "left the store in a dark blue, dirty, Ford

pickup, with the driver's window covered with plastic rather than glass." 316 Ark. at 723, 875 S.W.2d at 85-86. The police officer further explained that in reliance on the information, he broadcast a description of the truck to other police units in the area and that another sergeant was alerted that a truck he had seen matched the description of the robber's vehicle, causing another police officer to be on the lookout for it. While not addressing Martin's constitutional arguments because they were not raised below, this court, on appeal, did conclude that the statements were not hearsay:

> An out-of-court statement is not hearsay if it is offered to show the basis of action. Ark. R. Evid. 801(c); *Bliss v. State*, 282 Ark. 315, 668 S.W.2d 936 (1984). Officer Otis's testimony was given in order to explain why Sergeant Bailey instructed [Officer] Zeke to locate the truck and determine the identity of the driver and why Martin's photograph was placed in a lineup to show to the victim. *See Dandridge v. State*, 292 Ark. 40, 727 S.W.2d 851 (1987). Because his testimony was provided in order to show the "basis of action," we hold that the trial court did not err in overruling Martin's hearsay objection.

*Id.*, 875 S.W.2d at 86.

In the case at hand, Otis's statements to Detective Keel were not introduced to establish the truth of the matter asserted regarding Baker's crime against Otis, but, instead, were introduced to demonstrate Otis's connection to Baker and, thus, Dednam's connection to Otis. As evidenced from Detective Keel's testimony, she relayed the information that she received from Otis and the actions she took based upon that information, which were to secure a warrant for Baker's arrest. As the statements were presented to establish the basis for her actions in obtaining an arrest warrant for Baker and not the truth of whether Baker actually robbed Otis, which was a separate crime, we hold that Otis's statements to Detective Keel did not constitute hearsay.

We recognize that there is no question but that Detective Keel's testimony was helpful in establishing Dednam's motive for the crime. The State's theory in the instant case was that Dednam killed Otis as a favor to Baker, perhaps either in retaliation for identifying Baker as the one who robbed him or to eliminate the testimony of the victim of Baker's alleged crime. While the state is not required to prove motive, this court has held

that the state is entitled to introduce evidence showing all circumstances which either explain the act, show a motive for acting, or illustrate the accused's state of mind. *See Richmond v. State*, 302 Ark. 498, 791 S.W.2d 691 (1990). But even so, establishing motive does not equate to proving the truth of whether Otis was robbed or not. Where a statement is admitted for a legitimate, non-hearsay purpose, that is, not to prove the truth of the assertions therein, the statement is not hearsay under the traditional rules of evidence and the non-hearsay aspect raises no confrontation-clause concerns. *See Tennessee v. Street*, 471 U.S. 409 (1985) (holding that Street's confrontation-clause rights were not violated by the introduction into evidence of an accomplice's confession for the non-hearsay purpose of rebutting Street's testimony that his confession was coercively derived from the accomplice's statement) (cited by the Supreme Court in *Crawford v. Washington, supra*, for the proposition that the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted).

■ Dednam argues further that the admission of the statements by Otis to Detective Keel violated his rights under the Confrontation Clause. This too is a meritless argument. In *Crawford v. Washington, supra*, the Court noted that "[t]he [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 124 S. Ct. at 1369, n.9. While Otis's statements to Detective Keel may have been testimonial in nature, they were admitted to demonstrate the basis of Detective Keel's actions in seeking an arrest warrant for Baker, whom Dednam subsequently visited in jail the night of Otis's murder, and further to establish motive, and not to prove that Baker actually robbed Otis. Because the statements were not admitted for the truth of the matter asserted, cross-examination was not required to test their veracity. Hence, the statements are not barred by the Confrontation Clause. *See Tennessee v. Street, supra.*

Because we affirm on the basis that the circuit court did not abuse its discretion in admitting Detective Keel's testimony, we need not address the State's alternative argument of harmless error.

The record in this case has been reviewed for other reversible error pursuant to Supreme Court Rule 4-3(h), and none has been found.

Affirmed.

GUNTER, J., not participating.