Karen R. Baker, Justice, dissenting.
*681 I dissent from the majority opinion because based on the record before the court, the State failed to present sufficient proof to support Virginia's conviction. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. Ross v. State , 346 Ark. 225, 230, 57 S.W.3d 152, 156. Whether the evidence excludes every other hypothesis is left to the jury to decide. Carmichael v. State , 340 Ark. 598, 12 S.W.3d 225 (2000). Upon review, this court's role is to determine whether the jury resorted to speculation and conjecture in reaching its verdict. Ross , 346 Ark. 225, 57 S.W.3d 152 ; Phillips v. State , 344 Ark. 453, 40 S.W.3d 778 (2001). Here, the State did not offer substantial evidence to support that Virginia committed capital murder because the evidence is not of sufficient certainty and precision to compel a conclusion without resorting to suspicion or conjecture.
From my review, several critical pieces of evidence are lacking in this case. First, the State did not present any evidence to place Virginia at the scene or to discredit her alibi. Although the majority contends that Virginia's whereabouts at the time of the murder are established through Detective Haak's testimony, the McDonald's surveillance video that the majority relies on was not shown to the jury and does not support Haak's testimony.
Significant to the State's case were videos and photos from a McDonald's in Texarkana used to establish Virginia's whereabouts and to discredit her version of events. Specifically, State's exhibits # 191, # 192. On November 2, 2017, we remanded this matter to the circuit court to settle the record. We explained:
In this case, it is impossible to determine from the record what was in front of the jury. The State introduced multiple surveillance videos and photographs in its case-in-chief, State's Exhibits nos. 191-196. However, State's exhibit no. 191 is only in the record and not the addendum, and the record is absent evidence that exhibit no. 191 was shown to the jury.
Hyatt v. State , 2017 Ark. 296, at 1-2, 2017 WL 4985003. On December 4, 2017, after a hearing to settle the record, the parties supplemented the record and stipulated to the following regarding Exhibit # 191:
THE STATE : The agreement and the stipulation is that 191 which was a McDonald's video, that it was introduced into the record but was not shown to the jury. It is in the record and in the transcript, why it is not in the addendum, we don't know.
(Emphasis added.) Herein lies the speculation and conjecture. Because # 191 was not published to the jury then Detective Nall's testimony requires the jury to resort to speculation because it is unclear from the record what his testimony is based on.
At trial, during the State's direct examination of Detective Nall, the State introduced the McDonald's videos. The following colloquy occurred:
THE STATE : Do you know the approximate time that she is at McDonald's in the video?
DETECTIVE NALL : I believe it will be camera fourteen at the pay window she would show up at 9:27 a.m.
VIDEO PUBLISHED TO THE JURY
THE STATE : And is the time indicated in the top left hand corner of this video?
DETECTIVE NALL : Yes, I believe it is.
THE STATE : So this is 9:26:43?
DETECTIVE NALL : Yes.
THE STATE : Is this car you identified as belonging to Virginia Hyatt?
DETECTIVE NALL : Yes.
*682 THE STATE : And did the McDonald's have several views of the drive through?
DETECTIVE NALL : Yes. They had a side from this camera angle at the pay window they have a camera angled that also shows the drive through line and they also have a camera that shows at the food window. This is the car right here.
....
THE STATE : And can you identify this?
DETECTIVE NALL : Yes. That will be through the food window. That would be camera 20, I believe.
THE STATE : And that approximate time of this video currently is 9:29 in the morning; is this angle that you referred to that you could see her face more clearly?
DETECTIVE NALL : Yes.
THE STATE : Is that her?
DETECTIVE NALL : Yes, that is.
This testimony is based on video footage that the parties stipulated was not shown to the jury. Therefore, the record does not support Detective Nall's testimony and is therefore unreliable.
Second, the E-Z Mart video evidence the majority asserts offers proof of Virginia driving to Patricia's residence on the morning of the murder and then shortly thereafter leaving Patricia's is of no moment. The majority relies on the E-Z Mart videos to support Virginia's conviction: "Detectives also obtained video footage from the E-Z Mart located about three miles from Patricia's house. Detective Nall testified that video shows a vehicle matching Virginia's car heading in the direction of Patricia's house at 7:53:42 a.m. He testified that a similar vehicle was captured by video footage at 8:16:18 a.m. traveling in the opposite direction." The photographs and surveillance videos were taken on a foggy morning from a distance, and even the highest quality photograph and videos are difficult to decipher. In my view, it is impossible to decipher a make, model, year, or license plate of the vehicle or identify the occupants of the vehicle. The jury had to resort to speculation to conclude that the vehicle in the video was similar to Virginia's. Additionally, Barbara testified that she and Virginia drove identical vehicles, yet the majority relies on grainy photos and videos that upon review, it is impossible to determine the make, model or license plate to support affirming Virginia's conviction. This simply cannot be substantial evidence.
In my view, based on the record before this court, the evidence only demonstrates the following: James and Patricia were involved in an extramarital affair. Virginia was not happy about James and Patricia's relationship. Virginia did not want to share her husband with Patricia. Virginia was jealous and angry.
Finally, although the majority states that pursuant to Rule 4-3(i) it has reviewed the record for all errors prejudicial to Virginia and no reversible error was found, I disagree. The circuit court erred when it admitted State's exhibit # 142, the Arkansas State Crime Laboratory "Body Submission Form." At a pretrial hearing, the State sought to introduce a statement made by deceased witness Ken Caldwell to Thomas Quinn. The circuit court held a pre-trial hearing and from the bench denied the State's motion and excluded Caldwell's statement to Quinn as hearsay. The contents of that statement and the hearing are as follows. On December 3, 2013, Patricia was to pick Caldwell up to take him to an appointment. Patricia did not arrive. Caldwell was not able to drive due to health issues and he was concerned about Patricia because she was always very punctual. Patricia called Quinn and asked him to go check on Patricia. Quinn testified that Caldwell was upset and stated that he *683 (Caldwell) was upset about "the situation between Patricia and Virginia and said he can't get a hold of her. She's never been late." Caldwell explained to Quinn that he had spoken with Patricia earlier in the morning and that Caldwell "relayed that he was concerned over the trouble Patricia and Virginia were having. I don't recall him telling me specifically interaction that other than he did mention he was worried over the interaction Patricia and Virginia were having recently." Quinn further testified that Caldwell relayed that when Caldwell was on the phone with Patricia, at the end of his conversation with Patricia, "Patricia was hanging up as she said 'she's coming up the driveway.' " This testimony was excluded by the circuit court's November 6, 2015 ruling from the bench: "The court just cannot find that the State needs [sic] [meets] the threshold proof to show that that should be admitted."
At trial, the circuit court admitted State's exhibit # 142, the body submission form, which is in direct contravention of the circuit court's ruling regarding Caldwell's statement.
During the medical examiner's testimony, the State sought to admit the form, and it was admitted over Virginia's objection: The form in its entirety states as follows:
DEFENSE COUNSEL : Judge, this particular exhibit seems in violation of previous court orders concerning telephone calls between Ken Caldwell and Patricia Wheelington. Damon's reference, the victim was last seen at 0800 hours while speaking on the phone with a friend.
THE COURT : Let me look at it.
DEFENSE COUNSEL : It's contained there and then in the next paragraph as well.
THE PROSECUTOR : It does not state-that [Patricia] Wheelington was speaking to Virginia Hyatt. It simply states-
THE COURT : That doesn't come to anything-recognition of the body was submitted and-that information causes anyone to act.
DEFENSE COUNSEL : Note our objection.
The admission of this form was prejudicial to Virginia and contains inadmissible hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801. "This court has been constant and adamant that matters pertaining to the admissibility of evidence are left to the sound discretion of the circuit court. See, e.g. , Martin v. State , 346 Ark. 198, 57 S.W.3d 136 (2001). Moreover, we will not reverse a circuit court's ruling on a hearsay question unless the appellant can show that the circuit court abused its discretion. See id. " Dednam v. State , 360 Ark. 240, 243, 200 S.W.3d 875, 877 (2005).
In this case, the Arkansas State Crime Laboratory Body Submission Form was signed by Detective Nall. However, Detective Nall did not make the statements that are contained in this form, and in my opinion, are arguably not admissible. Although the form did not contain Patricia's statement regarding "coming down the driveway," the form contained prejudicial hearsay evidence that otherwise would not have been before the jury and was excluded by the circuit court's pretrial ruling denying the admissibility of the "Ken Caldwell conversation." In the pre-trial hearing on November 5, 2015, the circuit court ruled from the bench and denied the State's motion to admit Ken Caldwell's statement as excited utterances or as a residual-hearsay exception. The form contains prejudicial hearsay evidence that otherwise would not have been before the jury.
*684 DATE/TIME LAST SEEN ALIVE: 12/03/13 @0800 HOURS
This evidence was not before the jury through any other witnesses. Patricia was found at 6:05 p.m. and had clearly been dead for several hours, but none of the evidence submitted supported a time of death of 0800 hours or that Patricia was last seen alive at 0800.
DATE/TIME LAST SEEN ALIVE BY WHOM: SPOKE ON THE PHONE WITH JAMES CALDWELL
This evidence was not before the jury-that Caldwell was definitively the last person to visit with her. The form states "last seen alive by whom" as if Caldwell had filled out the form to prove that he was the last person to speak with her.
IF SUSPICIOUS DEATH, STATE REASONS: THE VICTIM WAS LAST KNOWN TO BE ALIVE AT 0800 ... HOURS WHILE SPEAKING ON THE PHONE WITH A FRIEND. THE VICTIM WAS APPROACHED BY SOMEONE AND NO FURTHER CONTACT WAS MADE WITH HER. DURING THE SAME TIME , NEIGHBORS HEARD SEVERAL GUNSHOTS. AFTER ATTEMPTING TO MAKE CONTACT WITH THE VICTIM FOR SEVERAL HOURS , FRIENDS STOPPED BY TO CHECK ON HER AND FOUND HER DECEASED .
Caldwell stated that "at 0800 hours while speaking on the phone with a friend. The victim was approached by someone and no further contact was made." This statement was made by Caldwell for the truth of the matter asserted and was therefore inadmissible. No other evidence supported this statement, and it was prejudicial to Virginia.
After the exhibit was admitted, the State then asked questions of Detective Nall and had him read the form again. Further, in closing, on rebuttal, albeit without objection, the State argued:
You have the evidence that the victim had been on the phone with Mr. Ken Caldwell starting at 7:57 a.m., that call lasting about a minute and fifty-two seconds according to the phone records, you have that. And after that, you have the evidence and testimony that all attempts to contact the victim the rest of the day were unsuccessful. That's shown by witness testimony but verified by the phone records including the voice mail from Ken Caldwell who the victim had been on the phone with that morning in that 7:57 a.m. phone call. Now, the victim was supposed to pick Mr. Caldwell up at three o'clock but she didn't show up to pick him up. Now Mr. Caldwell, as you've heard the testimony, these folks that are known associated with-associated with Guys & Dolls and you heard the testimony about all of these people that the only person that [Patricia] Wheelington had been having problems with was Virginia Hyatt. So who do you think Ken Caldwell was talking to the victim about at 7:57 in the morning? Who do you think she was talking to him about that morning? The same person that was there the morning before at the same time. And who had [Patricia] Wheelington been having trouble with, anybody but [sic] Virginia Hyatt. So I submit to you that's the person they were talking about in that phone call at 7:57 in the morning.
In my view, this is a prejudicial error and the court abused its discretion in admitting this document and was in direct contravention of the circuit court's earlier ruling.
Based on my discussion above, substantial evidence does not support Virginia's conviction and sentence, and I would reverse and dismiss this matter.
Hart, J., joins.